to the estate of which they were executors. It was held, however, that extrinsic evidence could not be considered to change the plain terms of the bond. These cases are but illustrative of the rule generally applied to cases like the present, of which there are many instances in the books. See Barns v. Barrow, 61 N. Y. 39, 19 Am. Rep. 247, and cases cited.

[2] The present case is clearly distinguishable from those in which there is an ambiguity upon the face of the instrument. Beakes v. Da Cunha, 126 N. Y. 293, 27 N. E. 251; Powers v. Clarke, 127 N. Y. 417, 28 N. E. 402. It is quite true, as remarked in Gamble. v. Cuneo, 21 App. Div. 413, 47 N. Y. Supp. 548, that:

"Where the question is as to the meaning of the language of the contract, there is no difference · between the contract of the surety and that of anybody else. In the case of a surety, as in the case of anybody else, when it becomes necessary to construe the contract, the usual rules are to be observed, and it is to be interpreted like any other paper."

In the case at bar, however, there is no room for construction or interpretation. The guaranty is perfectly clear and plain as it stands. It undertakes to guarantee A. W. Todebush & Co. To so read ·it as to turn it into a guaranty of A. W. Todebush Company would be, not to construe it, but to change its tenor. This cannot be done.

It follows that the determination of the Appellate Term and the judgment of the City Court must be reversed, and the complaint dismissed, with costs to appellant in all courts.

INGRAHAM, P. J., and DOWLING, J., concur. LAUGHLIN, J., dissents.

---

PEOPLE ex rel. UNION RY. CO. v. STATE BOARD OF TAX COM'RS (CITY OF NEW YORK, Intervener).

(Supreme Court, Appellate Division, First Department. July 10, 1913.)

1. TAXATION (§ 376*)—ASSESSMENT—VALUE OF SPECIAL FRANCHISE.
    In assessing the franchise of a street railroad company for taxation, the value of cars owned by it, and not used in connection with the franchise, was properly excluded.
    . [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

2. TAXATION (§ 376*)—ASSESSMENT—VALUE OF SPECIAL FRANCHISE.
    The salary of the receiver of a street car company and payments made to the city.under the requirements of Tax Law (Consol. Laws 1909, c. 60) § 48, should be deducted from the gross earnings in assessing the franchise.
    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

3. TAXATION (§ 376*)—ASSESSMENT—VALUE OF SPECIAL FRANCHISE.
    Where a street car company operated a line owned by another com-pany, and the income from such operation was included in the gross in-come stipulated in the proceedings to assess a special franchise, such in-come is not properly considered for that purpose under Tax Law (Consol.

Laws 1909, c. 60) § 32, providing that special franchises are assessable against their owner.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 625, 629–631; Dec. Dig. § 376.*]

Appeal from Special Term, New York County.

Certiorari by the People of the State of New York, on the relation of the Union Railway Company, against the State Board of Tax Commissioners and City of New York Intervener, for a reduction of an assessment. From an order of the Special Term affirming the assessment of special franchises, relator appeals. Order reversed, and assessments reduced.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, DOWLING, and HOTCHKISS, JJ.

Joseph P. Cotton, Jr., of New York City (George S. Franklin, of New York City, on the brief), for appellant.

William A. McQuaid, of New York City, for respondent State Board of Tax Commissioners.

Curtis A. Peters, of New York City (Addison B. Scoville, of New York City, on the brief), for respondent City of New York.

LAUGHLIN, J. The court tested these assessments by the net earnings rule, and found that the net income attributable to the special franchises was $408,164.55, and this was capitalized at 6 per cent. The earnings and operating expenses of the relator in the two boroughs were not kept separate. The court proceeded in ascertaining the value as if the entire franchises were in the same tax district, and as if the two assessments were combined in one, and found that their total value was $8,449,481.39, and as the assessments were only about 53 per cent. of this amount no reduction was made.

[1] The relator leased 62 cars, and did not use them in connection with operating its franchises. According to our ruling in the Third Avenue Case, the court properly excluded the value of these cars in ascertaining the value of the tangible property. The value of the real estate of the relator was stipulated at $557,600; but it appears that one parcel was a "dismantled power house" of the value of $150,000, and another parcel was "unimproved land" valued at $9,000. The court found that the value of its real estate used for street railway purposes was $418,600, from which it is to be inferred that the court excluded the two parcels specified. The relator failed to show facts sufficient to entitle it to a return on this real estate within our ruling in the Third avenue proceeding. The same claim is made by the relator here as in the Third avenue proceeding with respect to reproduction value of the tangible property in the streets, development expenses, "interest income," and taxes paid in 1909, but assessed and due prior to that year. The court correctly ruled against the relator on those points.

[2] The court, however, erred in refusing to deduct from the gross receipts the salary of the receiver, amounting to $18,000, and in ac-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cepting the testimony in behalf of the respondents with respect to the items included in operating expenses, which should have been charged to depreciation, and in deducting the sum of $121,923.21 from operating expenses on this account, instead of accepting the evidence adduced by the relator which shows that not more than $31,668.56 should have been so deducted, the testimony on this point being similar to that considered in the opinion in the Third avenue proceeding. These items, which should be deducted from the net income, as found by the court, aggregate $108,254.65.

[3] The court also erred in refusing to deduct from the gross receipts the sum of $61,608.66 for payments to the city, pursuant to the requirements of section 48 of the Tax Law (Consol. Laws 1909, c. 60). The relator claimed a return on the value of the property of the Bronx Traction Company, which it was stipulated was $285,429.91, on the basis of cost of reproduction. The gross income of the relator was stipulated at $2,017,880.31, and it was further stipulated that it operated the Bronx Traction Company, and that it "derives from the operation thereof the entire proceeds or income from such operation," and that such income is included in the stipulated gross income of the relator. It was not shown what amount of income the relator derived from the operation of the Bronx Traction Company line. Special franchises are assessable to the owner. Section 32, Tax Law. The evidence does not show that the relator owns all the capital stock of the Bronx Traction Company or any of it. The relator should not be charged with the income received from operating the Bronx Traction Company, if it does not own the franchises of that company. Since, however, the receipts from the operation of the relator's own franchises and those of the Bronx Traction Company have not been separately shown, it is difficult to make the proper reduction. The only reduction asked by the relator on account of the Bronx Traction Company is $17,125.79 for a return on the reproduction value of the property of that company; and while, for the reasons already stated, that is an erroneous theory, it is equitable, since the relator has charged itself and has been charged by the trial court with the entire receipts from the Bronx Traction Company, and has not been credited with any liability to that company.

Reducing the net income by these amounts which aggregated $186,-989.10 and capitalizing the remainder at 7 per cent. shows the value of the intangible element of the special franchises of the relator to be $3,159,649.28; and adding to this the value of the tangible property in the streets gives $4,796,388.17 as the total value of the special franchises of the relator, and equalizing this at 90 per cent. shows that they should have been assessed at $4,316,749.35, which requires a reduction from their assessed valuation of $103,250.55 and apportioning this to the assessment in each of the boroughs on the mileage basis requires that the assessment for the borough of the Bronx be reduced from $4,200,000 to $4,099,468.97, and for the borough of Manhattan from $220,000 to $217,280.38.

It follows that the order should be reversed, and the assessments reduced accordingly without costs. All concur.